IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SUSAN K. SEARS                                    PLAINTIFF

        v.              Case No. 06-5089

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY                                 DEFENDANTS

MEMORANDUM OPINION

Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendant's decision to deny her claim for long-term disability benefits was unreasonable.

This matter is before the Court for decision on the stipulated administrative record (Doc. 5), Plaintiff's Motion for Summary Judgment and Supporting Brief (Docs. 9 and 12), Defendant's Cross Motion for Summary Judgment (Doc. 18), Defendant's response to Motion for Summary Judgment (Doc. 19), Defendant's Brief in Response to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross Motion for Summary Judgment (Doc. 22), and Response to Cross Motion for Summary Judgment by Plaintiff (Doc. 23).

For the reasons stated below, the Court concludes Defendant's decision was supported by substantial evidence and is **AFFIRMED.**  Plaintiff's claim is denied and Plaintiff's Complaint (Doc. 1) is dismissed with prejudice.

**BACKGROUND**.

Plaintiff was employed as an Inventory Coordinator for Sam's Club, last working full time on January 9, 1999. Plaintiff had been employed, in various positions, by Wal-Mart Stores, Inc., since November 5, 1979.

Plaintiff was diagnosed with systemic lupus erythematosis ("SLE") in January 1996, which caused Plaintiff to suffer from pancreatitis and lupus cerebritis. She also incurred psychological problems associated with lupus cerebritis.

In 1997 Plaintiff took a 90-day medical leave of absence due to acute anxiety. She took intermittent leaves from January 1998 through August 1998 due to the SLE. Plaintiff was removed from her position as Inventory Coordinator in August of 1998 because she could no longer fulfill all the responsibilities of the position. Plaintiff tired easily, lost her concentration in performing the job and was unable to handle the stress of the position.

Plaintiff is a participant in a Long Term Disability Policy issued by Defendant. After being hospitalized for two weeks due to SLE, Plaintiff applied for long term disability benefits in August of 1998. Plaintiff was diagnosed by Dr. David as being able to only stand 5 minutes, walk less than 100 feet, sit indefinitely, unable to carry groceries, unable to reach or work overhead, unable to push a shopping cart more

than 100 feet, and only able to drive short distances.

Hartford determined that Plaintiff could not perform her own occupation, and approved her claim for long term disability benefits through August of 1999.  In October of 1999, Defendant notified Plaintiff that her claim for benefits was terminated in August of that year.  That decision was ultimately reversed.

Plaintiff was awarded disability benefits in June of 1999 from the Social Security Administration.  This benefit was from April 1998 until April of 1999.  In 2000, Plaintiff received a Notice of Decision - Fully favorable from the social security administration.

In 2003 Plaintiff advised Dr. David that she had begun taking care of her granddaughter part-time.  Dr. David noted that Plaintiff's progress was "unchanged" in December 2003 and that she was doing "extremely well" with her lupus.

In May 2004, Defendant participated in a telephone conference with Plaintiff.  Plaintiff stated she would see her grandson to pick him up from day-care; could perform only one household task per day; could drive but not outside her comfort zone, for example, 20 miles would be too far; her anxiety was controlled with medication; and the medication limited her SLE "flares."  After this conversation, Defendant determined the differences between the limitations noted from

Plaintiff's physicians and Plaintiff's self reported limitations were extreme. Defendant then elected to conduct video surveillance.

The video surveillance showed Plaintiff driving with little difficulty, multitasking, carrying a 20 to 25 pound child with no noticeable discomfort, and engaging in social activities with family members. Dr. Brown, a consulting physician, after a review of Plaintiff's file, concluded that Plaintiff was capable of working in some capacity. Dr. Ferrante, another consulting physician, also conducted an independent review of Plaintiff's records. Dr. Ferrante spoke with Dr. David, Plaintiff's treating physician, about Plaintiff and Dr. David observed that Plaintiff was unable to work, mainly due to her cognitive impairment and poor decision making. Ultimately, Dr. Ferrante concluded Plaintiff was capable of work at the light level.

Defendant attempted to obtain a job description from Plaintiff's employer for an Employability Analysis to be performed. However, Wal-Mart/Sam's Club had no job description for Plaintiff's position, but provided a description for a position with similar duties and responsibilities and confirmed that Plaintiff's previous position had been a "sedentary" one.

On May 10, 2005 Defendant notified Plaintiff that she no

longer met the definition of "total disability" as defined in the Policy from a physical perspective. Defendant did not immediately terminate Plaintiff's benefits but notified her it was applying the 24-month Mental Nervous limitation to her claim and that she would have benefits through April of 2007.

Plaintiff completed a Functional Capacity Evaluation ("FCE") in September of 2005. This FCE reflected Plaintiff could perform sedentary work on a full time basis. The FCE did not reference the video, or other physicians' reports. There was also an independent medical evaluation, apparently made without reference to any of the records in Plaintiff's file, which concluded Sears could not return to her previous working condition or perform specific tasks of her previous work. Another independent medical review was conducted by a Rheumatologist, Dr. Beck. Dr. Beck reviewed the medical records and surveillance video and observed that Plaintiff was seen in the video undertaking greater physical tasks than sedentary or light work would permit. Dr. Beck stated Plaintiff could work at the full time sedentary level.

Plaintiff appealed the May 2005 decision terminating her benefits. Defendant denied the appeal stating that the "weight of the evidence continues to support that Ms. Sears retains the physical capacity for working on a full time basis in a sedentary or light duty capacity. . .."

On May 19, 2006, Plaintiff filed this action under ERISA seeking to overturn the denial of long-term disability benefits.

**DISCUSSION**.

Under ERISA, a denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Accordingly, the Court must be guided by the language of the plan to determine the proper standard of review.

The parties agree abuse of discretion is the correct standard to apply in this case. The Eighth Circuit Court of Appeals has "variously defined . . . an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994) (citations omitted). "The proper inquiry into the deferential standard is whether 'the plan administrator's decision was reasonable; i.e., supported by substantial evidence.'" *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637,

641 (8th Cir. 1997) *(*quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)).

"While the word 'reasonable' possesses numerous connotations, this court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]'" *Id.* at 641 (citation omitted). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' *Id.* If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (citation omitted).

Where there is a difference of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find that the employee is not disabled unless "the administrative decision lacks support in the record, or . . . the evidence in support of the decision does not ring true and is . . . overwhelmed by contrary evidence." *Donaho*, 74 F.3d at 901 (8th Cir. 1996).

In the present case, Plaintiff alleges the Defendant was unreasonable in denying Plaintiff's long-term disability benefits because she remains "totally disabled" as defined in

the policy.

Plan participants are eligible for LTD benefits if they are "totally disabled." The Plan defines "Total Disability" for purposes of LTD benefits as follows:

"Total Disability" or totally Disabled means that:
(1)   During the Elimination Period; and
(2)   for the next 12 months, you are prevented by
        (a)   accidental bodily injury;
        (b)   Sickness
        (c)   mental illness;
        (d)   substance abuse; or
        (e)   pregnancy
from performing the essential duties of your occupation, and are under the continuous care of a Physician and as a result you are earning less than 20% of your Pre-disability earnings unless engaged in a program of Rehabilitative Employment approved by us,

After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.

The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

Plaintiff argues the medical history supports a conclusion for total disability and her status as totally disabled has not changed.  Plaintiff also points to the Social Security Administration's award of long-term disability benefits.

Defendant contends the discrepancy in information self-reported by Plaintiff and that reported by her physician is substantial to warrant the investigation with video surveillance.   Defendant further contends the video

Page 8 of  10

surveillance supports its determination as does the FCE obtained by Plaintiff to support her appeal, as well as the medical reviews by an independent rheumatologist and psychiatrist. Additionally, Defendant contends it is supported by a second rheumatologist and an independent neuropsychological examination of Plaintiff.

While Plaintiff contends the medical reviewers Defendant relied upon "exaggerated and distorted" evidence of Plaintiff's physical abilities and limitations. However, a review of those reports can not support Plaintiff's contentions. She is seen to be performing heavy lifting and engaging in social interactions as well as performing multiple activities. Moreover, the medical reviewers, some of whom do not even cite or refer to the video, do not appear to distort the evidence. While Plaintiff mentioned she could perform some of the activities demonstrated in the video, she did not state she could perform them to the degree the video reflects.

Several physicians who reviewed Plaintiff's file or who examined Plaintiff directly opined that Plaintiff was able to perform jobs at the light or sedentary level. Aside from Plaintiff's claims that these physicians distorted the evidence of her abilities, there is no reason given as to why Defendant should not have relied upon these medical determinations.

Moreover, Plaintiff contends Defendant abused its discretion by being inconsistent with its previous interpretation of the plan, ignoring the language in the plan, making its decision without adequate information, and ignoring evidence of Plaintiff's total disability. However, the substantial evidence supports Defendant's decision.

**CONCLUSION**.

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 9) is DENIED. Defendant's Cross Motion for Summary Judgment (Doc. 18) is hereby GRANTED.

IT IS SO ORDERED.

*/s/ Robert T. Dawson*

Dated: February 8, 2007      Robert T. Dawson
                             United States District Judge